UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JEREMY L. J.[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-cv-00031-RLY-DML |
| | ) |
| ANDREW M. SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

Report and Recommendation on Complaint for Judicial Review

This matter was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 15). As addressed below, the magistrate judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that Jeremy was not disabled.

## Introduction

Jeremy applied in September 2014 for Supplemental Security Income disability benefits ("SSI") under Title XVI of the Social Security Act. Acting for the

---

[1] To protect privacy interests of claimants for Social Security benefits and consistent with a recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by his first name.

Commissioner following a hearing on March 6, 2018,[2] administrative law judge Monica LaPolt issued a decision on March 27, 2018, finding that Jeremy was not disabled. The Appeals Council denied review of the ALJ's decision on January 24, 2019, rendering the ALJ's decision for the Commissioner final. Jeremy timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Jeremy contends that the Commissioner's decision is not supported by substantial evidence because (1) the RFC and hypothetical question to the vocational expert ("VE") did not account for the effects of his mental impairments, including his difficulties with interacting with others and (2) the VE's opinion st step about available jobs did not quantify the extent to which they existed in the region where Jeremy lives or in several regions of the country.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Jeremy's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

---

[2] A hearing initially was held on September 6, 2017, and Jeremy appeared by telephone *pro se*. The ALJ explained the benefits of having counsel, and Jeremy sought and received a continuance to obtain counsel. Jeremy was represented by counsel at the March 6, 2018 hearing.

2

U.S.C. § 1382c(a)(3)(A). Jeremy is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B).  The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is

a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and RFC; if so, then he is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,*

357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. Jeremy's Vocational Profile

Before describing the ALJ's findings at steps one through five, the court provides information about Jeremy's vocational profile. He was born in 1981, was 33 years old when he filed his application for SSI disability benefits in September 2014, and was 36 years old when the ALJ issued her decision. Jeremy never went to high school and was not sure whether he finished the eighth grade. The record shows he received child disability benefits under the Supplemental Security Income program because of an intellectual disability, beginning in May 1994 (at age 13) but ending in June 1997 (at age 16), after the Agency's triennial continuing disability review. *See* R. 249. Jeremy testified that he has always suffered from ADHD (attention deficit hyperactivity disorder), was in special education classes in school, and was not sure why the benefits ended. R. 40-41. He suspected his parents may not have provided appropriate paperwork in connection with the three-year continuing disability review.[3] *See* R. 41.

---

[3] The Agency generally conducts a "continuing disability review" every three years. *See* https://www.ssa.gov/ssi/text-cdrs-ussi.htm.

5

Jeremy has little work experience. During the 14-year period before filing his application, Jeremy made less than $1,000 in half of those years. His highest earnings occurred when he had a job on an assembly line for nearly two years between 2011-2013, making a total of about $16,000 from that employment.

## II. The ALJ's Sequential Findings

At step one, the ALJ found that Jeremy had not been engaged in substantial gainful activity since he applied for disability benefits.[4] At step two, she found that Jeremy did not have a severe mental impairment but had several severe back-related impairments: lumbar spondylosis, central disc extrusion effacing the thecal sac, and mild to moderate foraminal stenosis. The medical records reflect only sporadic medical evaluation and treatment, much of which took place at hospital emergency rooms. Nearly all of the records concern Jeremy's back problems and treatment with narcotics or other pain relievers for back pain and associated radiating pain and numbness.[5] Jeremy received some mental health treatment late

---

[4]   Under the SSI program, a claimant who is found disabled cannot receive benefits for any period before the date of his application for benefits regardless if his onset of disability was before the application date. *See* 20 C.F.R. § 416.335.

[5]   After several emergency room visits in 2014 and early 2015 because of back pain and tingling in his legs, Jeremy finally saw a primary care provider outside the emergency room setting. Once he obtained health care under Indiana's Healthy Indiana Plan, his doctor ordered an MRI. The MRI, done in April 2015, showed evidence of a large central disc extrusion at L5-S1, which completely effaced the thecal sac and compressed sacral nerve roots, and showed mild to moderate foraminal stenosis (narrowing of the openings between bones in the spine through which nerves pass from the spinal cord) at L4-5 and L5-S1. He then underwent a pain management consultation in May 2015, but he did not continue that treatment or return to the primary care physician. Instead, apparently because of difficulty finding transportation to the pain management and primary care providers, Jeremy

6

in the period under review. He was diagnosed with depression and a generalized anxiety disorder and prescribed medication. The record before the ALJ did not include whatever evaluation and treatment Jeremy had undergone for ADHD or for the intellectual disability for which he had received benefits as a teenager. The lack of treatment—for physical and mental impairments—can be explained to a large extent by Jeremy's lack of health insurance for some of the time, lack of money, lack of personal transportation for the entire period, and incarceration for about 12 months from November 2016 to October 2017 and another three months in 2018.

At step three, the ALJ found no listings were met or medically equaled. Jeremy does not challenge her decisions at steps one through three. For the RFC, the ALJ decided that Jeremy is capable of sedentary work with an "at will" sit/stand option, certain other postural limits (only occasional balancing, stooping crouching, crawling), and additional limits on the use of foot controls and climbing. At step four, the ALJ found that Jeremy's past relevant work as a line welder was performed at the light level, inconsistent with his RFC limitation to sedentary work. She thus evaluated disability at step five and, based on the VE's testimony about available work, determined that Jeremy is capable of performing the

---

sought treatment for his pain from the local hospital's emergency room, returning to it in September 2015, November 2015, February 2016, and April 2016. A new MRI, done in August 2016, showed mild disc bulges at L5-S1 without compression on the thecal sac or nerve root, but a tear of the annulus (the fibrous ring that surrounds each disc) at L5-S1. Jeremy continued to treat his back pain through treatment and pain medication at the emergency room. Finally, in December 2017 (after being released from state prison in October), Jeremy went to a primary care clinic and requested a referral back to the pain management specialist he had seen 2 ½ years earlier, in May 2015.

7

following jobs and that they exist in sufficient numbers in the national economy: small product assembler (30,000 jobs), telephone solicitor (123,000 jobs), and product sorter (25,000 jobs). Thus, the ALJ concluded that Jeremy was not disabled at any time between his application for SSI benefits and the date of the ALJ's decision.

### III. Jeremy's Assertions of Error

Jeremy makes two assertions of error. Because the court finds persuasive Jeremy's first argument—that the ALJ did not properly support her decision to exclude limitations in the RFC from the effects of mental impairments—the court does not reach his second argument (that the ALJ could not rely on the VE's jobs numbers because the VE did not testify about regions of the country where the jobs exist).

### IV. Non-Severe Mental Impairment Effect on RFC

The ALJ did not expressly evaluate Jeremy's mental impairments—though not severe—in determining Jeremy's residual functional capacity. Because Jeremy did suffer from other severe impairments (those related to his back problems), the ALJ was required expressly to evaluate whether his non-severe mental impairments impose any functional restrictions requiring accommodation within an RFC. The ALJ's decision shows that she equated a finding of non-severity with no work limitation, or put another way, that an absence of work limitations necessarily follows from a finding of no severe mental impairment. She stated: "[S]ince I have found the claimant's mental impairments to be nonsevere, I have not included any

8

restrictions in [Jeremy's] residual functional capacity." R. 20. That is clear legal error.

### A. The ALJ's Mental Impairment Determination at Steps 2 and 3

Mental impairments are evaluated using a "special technique" described in 20 C.F.R. § 416.920a. The first task is deciding whether the claimant has a medically determinable mental impairment. § 416.920a(b). The ALJ decided that Jeremy does and moved to the second step. The second step requires deciding whether the mental impairment is "severe" or not by rating "the degree of functional limitation" in four broad areas: understanding, remembering, or applying information; interacting with others; concentration, persistence, and pace; and adapting and managing oneself. (These are the same criteria under the mental impairment listings that are evaluated at step three.) There are five possible ratings: none, mild, moderate, marked, and extreme. § 416.920a(b), (c).

The ALJ determined that Jeremy's mental impairments "cause no more than 'mild' limitation" in any of the four broad functional areas. R. 19.[6] Those ratings meant that Jeremy's mental impairments were non-severe:

---

[6] In making this finding that the limitations were "no more than mild," the ALJ barely mentioned evidence about Jeremy's mental functioning. She emphasized the lack of treatment and appeared to discount any problems with mental functioning because Jeremy's multiple visits to the emergency room focused on his back pain and not mental health. But no one suggested Jeremy needed emergency mental health treatment, such as might be required for a person undergoing a psychotic episode or suicidal thoughts and plan. She mentioned that Jeremy took GED classes but did not acknowledge Jeremy's testimony that he quit those classes because he was unable to keep up with the required studying. R. 38. The ALJ did not focus on Jeremy's and his girlfriend's disability functioning reports,

9

> If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

§ 416.920a(d)(1). *See also* 20 C.F.R. § 416.922 ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities.")

And, as noted above, because the ALJ found that the mental impairments were non-severe, she decided *ipso facto* that no work restrictions were necessary within the RFC.

### B. The Effect of Non-Severe Mental Impairments in Determining Residual Functional Capacity

If Jeremy's alleged disabling impairments were limited to the mental impairments that the ALJ determined were non-severe, then the conclusion that no limitations were warranted would stand without any need for particularized evaluation. This is because when a claimant does not suffer from *any* severe impairments, he is deemed not disabled as a matter of law at step two of the Social Security Administration's five-step sequential process for deciding disability, and it is not necessary to address the listing of impairments (step three) or make any determination about a claimant's residual functional capacity (which comes into play at steps four and five). The special technique for evaluating mental impairments follows this sequencing, in that it does not require the SSA to complete

---

which provide first-hand information about Jeremy's mental functioning in his day-to-day life activities.

10

in the administrative process a mental residual functional capacity assessment form if it has not identified a severe mental impairment. *See* 20 C.F.R. § 416.920a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.")[7]

But when a claimant has at least one severe impairment (as Jeremy does), he is entitled to have the ALJ evaluate whether the combination of his non-severe and severe impairments impose any functional limitations. The ALJ cannot merely conclude from non-severity that no limitations are necessary. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act. In *Bowen v. Yuckert,* 482 U.S. 137 (1987), the Court (quoting legislative history) emphasized the duty of the Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* at 150-151. Their combined effects must be "considered during the remaining stages of the sequential evaluation process." *Id.* at 151 (citing S. Rep. No. 98-466, p. 22 (1984)). Indeed, the Seventh Circuit has found that earlier

---

[7] In *Bowen v. Yuckert,* 482 U.S. 137 (1987), the Supreme Court upheld as rational and appropriate step two of the SSA's evaluation process, which disqualifies a claimant from eligibility for disability benefits if he cannot show that he suffers from a medically severe impairment. *See id.* at 148. Step two assists administrative efficiency "by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled" even if other factors were taken into account. *Id.* at 153.

11

regulations that allowed the Commissioner to ignore the combined effects of non-severe impairments "violated the plain terms of the Social Security Act." *See Johnson v. Sullivan,* 922 F.2d 346 (7th Cir. 1991) (affirming, in light of *Bowen,* its 1985 decision upholding the district court's injunction prohibiting the Commissioner's "no-combination" policy).

The Social Security Administration has been clear that the evaluation of whether a mental impairment is severe is an exercise separate from an evaluation whether a claimant has functional limitations stemming from even a non-severe mental impairment, assuming that the claimant otherwise suffers from a severe impairment. *See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not 'severe" . . . when we assess your residual functional capacity"); SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . . The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings. . . .") Thus, the ALJ's decision to forego evaluation about whether any limitations in the RFC were appropriate because of the effects of Jeremy's mental impairments merely because they were non-severe was error.

In this same vein, the fact the ALJ concluded for purposes of step two that Jeremy's mental impairments were properly rated as no more than "mild" and not

"none" in the four broad categories of functioning (regarding processing of information, interacting with others, CPP, and adapting and managing oneself) does not mean that an RFC *must* include mental functioning limitations. The point is that when mental impairments are not severe, they still must be evaluated for purposes of steps four and five. The court finds only that the Commissioner must make an assessment about Jeremy's mental impairments in the context of determining an appropriate RFC and may not rest the absence of functional limitations on the finding that his mental impairments are non-severe. The court is convinced that the ALJ's decision lacks such an assessment.

### V.     Jobs Information on Remand

It is not necessary for the court to address Jeremy's second assertion of error relating to the vocational expert's jobs information. That information may change if the ALJ determines restrictions are appropriate to account for functional limitations stemming from Jeremy's mental impairments.

### Conclusion

For the foregoing reasons, the magistrate judge recommends that the District Judge REVERSE and REMAND for further proceedings under sentence four of 42 U.S.C. §405(g) the Commissioner's decision that Jeremy was not disabled.

Any objections to this report and recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a

showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadline.

    IT IS SO RECOMMENDED.

Dated: February 14, 2020

                                      Debra McVicker Lynch
                                      United States Magistrate Judge
                                      Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system